ACCEPTED
04-014-00896
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
8/27/2015 9:52:23 PM
KEITH HOTTLE
CLERK

NO. 04-014-00896

## FOURTH COURT OF APPEALS

## SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

8/27/2015 9:52:23 PM

KEITH E. HOTTLE
Clerk

## HUGO ANALIZ,

### APPELLANT,

### VS.

## JOSE MARIA AGUIRRE, ET AL.,

### APPELLEES.

## APPEAL FROM THE 381ST JUDICIAL DISTRICT COURT

## STARR COUNTY, TEXAS

## TRIAL CAUSE NO. DC-09-71

## BRIEF OF APPELLEES

Margil Sanchez, Jr.,
Attorney at Law,
Bar I.D. No. 17570800,
P.O. Box 297/208 N. Britton Ave.,
Rio Grande City, TX., 78582-0297
Tel. No. (956) 487-7575
Fax No. (956) 487-8491
Email: msjlaw@yahoo.com
Attorney for Appellees
Jose Maria Aguirre, et al.,
August 27, 2015

**Oral Argument Not Requested**

i

## Identity of Parties and Counsel

Appellees Jose Maria Aguirre, Elias Aguirre, Jr., Arjelio Aguirre, Jose Guadalupe Aguirre, Mauricia A. Villarreal, Elsa A. Lara and Alma Rosa A. Trevino supplement the Appellant's Brief pursuant to Texas Rule of Appellate Procedure 38.2 as follows:

**APPELLANT:**
Hugo Alaniz

**APPELLEES:**
Jose Maria Aguirre,
Elias Aguirre, Jr.,
Arjelio Aguirre,
Jose Guadalupe Aguirre,
Mauricio A. Villarreal,
Elsa A. Lara,
Alma Rosa A. Trevino

**APPELLANT ATTORNEY AT THE TRIAL COURT AND ON APPEAL:**
Flor E. Flores
The Law Firm of Flore E. Flores, PLLC,
700 N. Flores St., Ste. E,
Rio Grande City, Texas, 78582

**APPELLEES' TRIAL COURT AND APPELLATE COUNSEL:**
Margil Sanchez, Jr.,
Attorney at Law,
P.O. Box 297/208 N. Britton Ave.,
Rio Grande City, Texas, 78582

# Table of Contents

Identity of Parties and Counsel...................................................ii

Table of Contents ................................................................iii

Index of Authorities ...........................................................iv & v

Statement of the Case ............................................................ 2

Statement of Facts ............................................................... 3

Issue Presented................................................................... 3

Standards of Review.............................................................. 11

Summary of Argument............................................................. 11

Argument and Authorities........................................................ 14

Prayer........................................................................... 17

Appendix .........................................................................A

# INDEX OF AUTHORITIES

**Cases:**                                                                 **Pages:**

*Benavides v. Stewart,* 655 S.W.2d 298, 300

(Tex. App.—Corpus Christi 1983, no writ)----------------------------------- Pg.15

*Bingham v. Boles,* 458 S.W.2d 99,100

(Tex. Civ. App.-El Paso 1970)----------------------------------------------- Pg. 17

*Franklin v. Donoho,*

 774 S.W.2d 308, 311 (Tex. App—Austin 1989, no writ) --------------- Pg.11

*Gannon v. Bywaters,* 669 S.W.2d 756, 758

(Tex. App.—Dallas 1984)----------------------------------------------------- Pg. 14

*Hickey v. Couchman,* 797 S.W.2d 103, 109

(Tex. App.—Corpus Christi, 1990, writ denied)-------------------------- Pg. 12

*Krause v. Hardin,* 222 S.W. 310, 312

(C.A.- San Antonio, 1920, dismissed w.o.j.)------------------------------- Pg. 15

*Lundelius v. Thompson,* 461 S.W.2d 153, 155

(Tex. Civ. App. –Austin 1970, writ ref. n.r.e.)--------------------------- Pg.16

*Morgan v. Morgan,* 657 S.W.2d 484, 487

(Tex. App.-Houston [1st Dist.] 1983, writ dismissed)-------------------- Pg.12

*Plas—Tex, Inc. v. U.S. Steel Corp,*

772, S.W.2d 442, 445 (Tex. 1989)------------------------------------------- Pg. 11

*Royal Maccabees Life Ins. Co. v. James*,

146 S.W.3d 340, 345(Tex. App.-Dallas, 2004, pet denied)----------------Pg.12

*Subaru of Am.Inc. v. David McDavid Nissan, Inc.*,

84 S.W. 3d 212, 227 (Tex. 2002)----------------------------------------- Pg. 11

*Walker v. Anderson*,

232 S.W. 3d 899 (Tex. App.-Dallas 2007, no petition)-------------------- Pg.12

# STATUTES & RULES

**Statutes:**                                                                                    **Pages:**

Section 16.021(1) and (3) of the Texas Practice
and Remedies Code ---------------------------------------------------------- Pg. 14

Section 16.026(a) of the Texas Civil Practice
and Remedies Code ---------------------------------------------------------- Pg. 14


**Rules:**                                                                                       **Pages:**

Rule 38 of the Texas Rules of Appellate Procedure------------------ Pg. 1

vi

No. 04-014-00896

---

FOURTH COURT OF APPEALS

SAN ANTONIO, TEXAS

---

HUGO ANALIZ,

APPELLANT,

Vs.

JOSE MARIA AGUIRRE, ET AL.,

"APPELLEES".

---

APPEAL FROM THE 381ST JUDICIAL DISTRICT COURT

STARR COUNTY, TEXAS

TRIAL CAUSE NO. DC-09-71

---

BRIEF OF "APPELLEES"

---

The "Appellees" Jose Maria Aguirre, Merced Aguirre, Elias Aguirre, Arjelio

Aguirre, Jose Guadalupe Aguirre, Mauricia A. Villarreal, Elsa A. Lara and Alma

Rosa A. Trevino (hereafter referred to as "Appellees" or "Aguirres") file this Brief

per Rule 38 of the Texas Rules of Appellate Procedure. Parties will be referred to

as designated in the trial court or as designated on appeal or by name. Reference to

the Clerk's Record will be to CR and page numbers. References to the Reporter's

1

Record will be to Volume Number}RR and followed by page number and then followed by line number(s).. Reference to the Statement of Facts will be to SOF and section by §,

## STATEMENT OF THE CASE

NATURE OF THE CASE:

1. This case involved a trespass to try title suit filed by "Appellees" containing a request for judicial recognition of their title to the tract of land in issue based on their adverse possession and the maturity of their title by limitation. In turn, Appellant claimed he had record title to the premises in dispute claiming he had bought it from the record title owner and possessed record title or color of title. *See generally* Appellant's Brief.

## DISPOSITION IN TRIAL COURT

1. Trial Judge: Honorable Jose Luis Garza.

2. Trial Court/County: 381st District Court of Starr County, Texas.

3. Course of Proceedings: The parties proceeded to bench trial on all triable issues. *See CR-004-0067 and generally 2,3RR.*

4. Trial Court Disposition: After a bench trial, the trial judge entered a Final Judgment recognizing that "Appellees" had matured title to the tract of land in question and awarded the "Aguirres" title by limitation.

## REQUEST FOR ORAL ARGUMENT

2

The "Appellees" do not request or see a need for oral arguments on this appeal.

## ISSUES PRESENTED

1. There was factually and legally sufficient evidence for the trial court to decree that the Plaintiffs (the "Appellees" herein) established title to the 0.2648 of an acre out of Share 9-D, Procion No. 85, Ancient Jurisdiction of Camargo, Mexico, now Starr County, Texas (thereafter referred to as the "premises" because the evidence showed that the "Appellees" and their predecessors had exercised adverse possession over the "premises" for more than ten years thereby maturing title by limitation.

## STATEMENT OF FACTS

1. On February 13th, 2009, the "Aguirres" filed their Original Petition in Trespass to Try Title claiming that Appellant Hugo Alaniz was trespassing into the "premises" that they owned by virtue of their adverse possession and that of their predecessors in interest for a continues period of more than ten years. (CR-Vol. 1, P. 0011-0017). On August 7th, 2013, the Appellant Hugo Alaniz responded with his Second Amended Defendant's Original Answer interposing a not guilty plea and claiming that he had in "good faith and under color of title claimed to be the owner of the land and paid taxes assessed thereon". (CR-Vol. 1, P. 0115-0117).

3

2. On August 8th, 2013, and on May 12th, 2014, a bench trial was conducted in this case. (*See generally CR. Vol., SOF P. 1*) At the start of the trial, "Appellees'" expert witness, Surveyor Eulalio Aguilar, Jr., testified that the "premises" were located in Porcion No. 85, former jurisdiction of Camargo, Mexico, Starr County, Texas. (2 RR18, 1-25; 19, 1-2, 4-9; 20, 7-19), Surveyor Aguilar also set out the route to get to and locate the "premises". (2 RR 20, 19-25; 25, 1).

3. Appellant Hugo Alaniz testified in "Appellees'" case in chief. CRR. 26 P. 26, L.21-22). Appellant affirmed that he agreed to buy the land from the "Aguirres" and gave them a pickup as the down payment for the amount of $5,000.00 (2RR29,6-10;16,24-25;30,1-3,11-23). Appellee added that he never paid the "Aguirres" the balance because he found out that the actual owners were the Margo family. (2RR31,17-19). Consequently, Appellee purchased the "premises" lot from the Margo family. (2RR 31,23-25;2RR 32,1-3). Hugo Alaniz confirmed that until he came to the United States at the age of nineteen, he had no prior knowledge of the "premises". (2RR35,6-19). Mr. Alaniz affirmed that he used the pass by to "premises" since his arrival in the United States in 1998 or 1999. (2RR36,3-15,20-22). Further, Appellant testified that the "Aguirres'" father had a house situated on the "premises" and that the "Aguirres" live in it. (2RR4-7). Mr. Alaniz agreed that the home was still there when he bought the "premises" though it was abandoned. (2RR37,24-25; 38,1-2). Appellant admitted that he was "glad"

4

to have purchased the "premises" for $10,000.00 when he had previously agreed to pay $45,000.00 (2RR4,19-22). Appellant stated that the seller Margo, who claimed to be the owner, was afraid that the "Aguirres" would file a lawsuit on "premises" that the "Margos" had sold to him (2RR49,6-12,16-20). Unwittingly, during his testimony Appellant Hugo Alaniz acknowledged that the "Appellees" were the owners when he stated that he had offered them the option of reimbursing him the $10,000.00 he had paid the Margos in order to keep "their" land. (2RR53,1-5).

4. Appellee Arjelio Aguirre testified that his father Elias Aguirre had passed away in 2001 about six years after his mother had died. (3RR26,21-24;27,6-9,16-17,20-25). Arjelio Aguirre affirmed that his parents lived on the "premises" since 1973. (3RR29, 7-16). He was present when his parents had bought the lot from Jesus "Chuchu" Tamez. (3RR29,17-24;3RR42,23-25;43,1-24). Mr. Arjelio Aguirre testifies that though his parents paid Jesus Tamez the full prize, they never got a deed but did received payment receipts. (3RR29,25;30,1-8). Appellee Arjelio Aguirre identified two of the receipts as being Plaintiff's Exhibit Nos. 1 and 2 issued by Mr. Tamez verifying payments on the "premises". (3RR30,9-11,16-22). Arjelio Aguirre pointed out that his parents moved into the "premises" purchased from Tamez in 1983 and resided there until both of them passed away. (3RR30,16-18,23,25;33,1-3). Arjelio Aguirre stated that his parents lived on the "premises" from 1973 until 1983 and from 1983 to 1993 and from 1993 to 2001 and nowhere

5

else during this time periods. (3RR33,4-23). Appellee Arjelio Aguirre related that they never paid any rent to Jesus Tamez, or to A.V. Margo or his children. (3RR34,4-16). Arjelio Aguirre explained that his parents moved the house onto this lot around 1973 and subsequently added a room to it. (3RR 34,17-25;35,1). Arjelio Aguirre said that he and all his brothers and sisters were raised in that house situated on the "premises" and that the brother Merced Aguirre and his family were the last ones to live there. (3RR36,13-17). The house was sold by Merced Aguirre. (3RR37,2-6). Arjelio Aguirre stated that his parents had obtained a loan to buy the house from A.V. Margo, his father's employer. (3RR35,4-15). He revealed that his father had not repaid the full amount of the loan to A.V. Margo and that the amount of $2,600.00 was left unpaid due to A.V. Margo not paying Elias Aguilar, Sr., for some work. (3RR37,18-25;38,1-16). Arjelio Aguirre expressed that when his father moved into the "premises" that he did so under the claim that he was the owner. (3RR39,14-20). Arjelio Aguirre informed that after his parents passed away no one asked him or his brothers and sisters to pay rent on the "premises" and no one ever ousted or filed a lawsuit to evict them. (3RR39,24-25;40,1-2,11-15;41,1-2). Arjelio Aguirre reaffirmed that from 1973 through 2001, his parents were in possession of the "premises" in action and that Elias Aguirre, Sr., claimed it as his own. (3RR41,3-9). He added that after his father died, his brothers and sisters claimed the "premises" as their own. (3RR41,10-13). Appellee

6

Arjelio Aguirre concluded by stating that the "premises" was owned by the "Aguirres" by virtue of their adverse possession. (3RR42,7-12). Cross-examination, Arjelio Aguirre remembered that when his father brought the "premise" it was "like a hill" and they leveled it. (3RR51,1-3). Arjelio Aguirre emphasized that the Aguirres" were not occupying the "premises" with A.V. Margo's permission. (3RR57,5-11).

5. Appellee Jose Maria Aguirre also testified (3RR59, 9-12). Appellee Jose Maria Aguirre identified the location of the "premises"(3RR61, 4-31). Appellee Jose Maria Aguirre stated that his father worked for A.V. Margo until the year of 1980. (3RR62,13-25). Appellee Jose Maria Aguirre specified that A.V. Margo could not have allowed anyone to live on his land without paying rent and neither could A.V. Margo's children. (3RR66,8-23). Mr. Aguirre identified Plaintiff's Exhibit 3 and 4 as being receipts issued by A.V. Margo evidencing his parents' payments to Mr. Margo on the loan used to purchase the "Aguirres'" home. (3RR68,2-13,21-15;69,1-8). Appellee Jose Maria Aguirre affirmed the details of the proposed sale of the "premises" to Appellant Hugo Alaniz and the delivery of the pickup by Appellant as the initial payment and the signing over of the certificate of title that allowed Mr. Aguirre to buy insurance for it. (3RR73,14-22;74,1-15). Jose Maria Aguirre testified that, under the belief that an agreement had existed between his father and A.V. Margo for the latter to pay "taxes", he told

7

Appellant that they needed to pay back $10,000.00 that Fred Margo, son of A.V. Margo, quoted to them as the amount that had been paid by A.V. Margo. (3RR76, 2-25;77,1-18). It was for this purpose that Jose Maria Aguirre's brother, Merced Aguirre, took Appellant to talk with Fred Margo and pay him the $10,000.00 and that would have thus left Appellant owing $35,000.00 to the "Aguirres" for the sale of the "premises". (3RR78,1-25;79,1-2). When Jose Maria Aguirre approached Appellant for payment or the balance, Appellant refused saying that he had bought from the Margos. (3RR80,7-16). Appellee Jose Maria Aguirre pointed to Appellant Alaniz that the "Aguirres" being in exclusive possession of the "premises" and that is why he had agreed to buy it from Appellees. (3RR81,6-13). This Appellee recounted that he took his father to pay the taxes but that he could not do so because his father's name was not on the tax rolls and that this was the reason they believed Fred Margo's declaration that they had paid the taxes in the amount of $10,000.00. (3RR94,2-5,17-25;95,1-7). Mr. Aguirre stated that Fred Margo only wanted repayment of the $10,000.00 and never told him that he was the owner of the "premises". (3RR95,8-17).

6. Fred Margo testified in this cause. (3RR100,1-5). Mr. Margo identified the "premises" in dispute as lying in "Share 9-D, Porcion 85". (3RR100,6-8). Mr. Margo admitted that Hugo Alaniz told him he had made a partial payment to the "Aguirres" for the purchase of the "premises". (3RR191,24-25;192,1-16). Indeed,

Mr. Margo agreed that Appellant's partial payment to Appellees for the purchase of the "premises" did not make any sense. (3RR120,17-25). Mr. Margo testified that his father had bought the "premises" from Jesus Tamez and that it lied in Share 9-D. (3RR115,13-24). Mr. Fred Margo also affirmed that his father had bought "6,600—some square feet" in Share 9-D. (3RR116,25;117,1-2). Mr. Fred Margo pointed out that the property Margo sold to Appellant was listed in his father's will. (3RR121,3-12). Mr. Margo further added that the lot they sold to Appellant was listed in his father estate's inventory. (3RR125,9-25;126,1). However, in rebuttal, Appellees introduced two documents as Plaintiffs' Exhibit Nos. 8 and 9, respectively consisting of the will of A.V. Margo and the Inventory filed in A.V. Margo's probate and neither of these two exhibits mention the property sold to Appellant by the Margos. (3RR189,23-25;190,1-25;191,1-11).

7. Rosa Arrian was called to testify by Appellees. (3RR148,19-20). She testified that she knew Elias Aguirre, Sr., and Manuela Aguirre as neighbors and as their employee. (3RR148,23-25;149,1-7). Ms. Arrian added that the "Aguirres" had a home and were in possession of the "premises" from 1972 to 2001. (3RR149,21-25;150,1-13).

8. Appellant presented the testimony of "Appellees'" brother Merced Aguirre who testified that "Appellees" were not the owners of the "premises" but that Fred Margo was. (3RR178,24-25;179,1-5). Merced Aguirre admitted that he had made

9

an agreement along with his brother Jose Maria Aguirre to sell the "premises" to Appellant Hugo Alaniz for $50,000.00. (3RR180,8-10,15-18). Merced Aguirre retorted that though he knew that he was not the owner of the "premises" that he had not been trying to defraud Appellant but that it was a "mistake".(3RR181,1-5). But on recall, Appellee Jose Maria Aguirre testified that it was he and Merced Aguirre who had retained "Appellees'" attorney to sue Appellant Hugo Alaniz over ownership of the "premises". (3RR185,4-17). Jose Maria Aguirre stated that Merced Aguirre's reversal of position was provoked by his anger upon realizing that he had to share the price paid for the purchase of the "premises" with his siblings and he believed he was entitled to the full share due to the oral representations of the "Appellees'" parents that they wanted their son Merced Aguirre to be the sole owner of the "premises" after they passed away. (3RR185,18-21;186,2-25;187,1-4). Mr. Aguirre stated in support of his testimony that Merced Aguirre sold their parents' home and did not share the sale proceeds he received with his brothers and sisters. (3RR187,9-17).

9. *Bench Trial and Final Judgment:* All questions of fact and law were submitted to the trial court and decided by the trial judge as apt in a bench trial.(1CR0218). The trial court entered judgment in favor of Appellees recognizing that they had matured title by limitations under their adverse possession of the "premises" (1CR0218-0220).

10.*Findings of Fact and Conclusion of Law:* The trial court did not issue any Findings of Facts or Conclusion of Law and none were requested. (1CR0001-0228)

## SUMMARY OF ARGUMENT

The "Appellees" advance that the evidence presented at trial was legally and factually sufficient to prove that their adverse possession of the "premises" was done under a claim of right that was contrary and hostile to claims of Appellant and the persons who sold to him.

## STANDARDS OF REVIEW

In the event finding of fact and conclusions of law are not requested and none were filed, the trial judgment is presumed to have all the needed findings of fact and the judgment will be affirmed on any reasonable theory that is in groove with the adduced evidence and the pertinent law. *Franklin v. Donoho,* 774 S.W.2d 308, 311 (Tex. App—Austin 1989, no writ). As regards conclusions of law, the appellate court would consider them as legal questions and therefore accord no binding or presumptive effect to the trial judge's conclusions. *Subaru of Am. Inc. v. David McDavid Nissan, Inc.,* 84 S.W. 3d 212, 227 (Tex. 2002). In reviewing a factual sufficiency point of error, the court of appeals has to scope and weigh all the evidence. *See Plas—Tex, Inc. v. U.S. Steel Corp,* 772, S.W.2d 442, 445 (Tex. 1989). But, as in this case, the Appellant is challenging the factual sufficiency of a

finding where the Appellees had the burden of proof, Appellant has to show that there was insufficient evidence to firm up the hostile finding. *See Hickey v. Couchman,* 797 S.W.2d 103, 109 (Tex. App.—Corpus Christi, 1990, writ denied).

## 1. NO-EVIDENCE POINT:

At the appellate level, the party, who advances a legal sufficiency point on an issue where he had the burden of proof, must show that there is no evidence to sustain the adverse finding. *Royal Maccabees Life Ins. Co. v. James,* 146.S.W. 3$^d$ 340, 345 (Tex. App- Dallas, 2004, pet. denied). On appellate review of a no evidence point, the reviewing court will take into account the evidence and inferences that sustain the judgment and will ignore the evidence and inferences that undermine the judgment. *Royal Maccabees,* supra., p.345.

## 2. AGAINST THE GREAT WEIGHT AND PREPONDERANCE OF THE EVIDENCE:

On the other hand, where a party on appeal argues that the trial court's findings are against the great weight and preponderance of the evidence, the appellant must overcome the presumption in support of sustaining the judgment. *Morgan v. Morgan,* 657 S.W. 2$^d$ 484, 487 (Tex. App. Houston 1st, Dist. 1983, writ dismissed).

3. The standards of review that apply to this appeal were set forth in *Walker v. Anderson,* 232 S.W. 3d 899(Tex. App.-Dallas 2007, no petition):

12

A. Since findings of facts are as binding as jury finding on the appellate court, the Appellant must challenge them unless the opposite point is shown as a matter of law or no evidence was submitted at trial to sustain the finding.

B. A legal sufficiency attack on a contrary finding made on a question where the Appellants bore the burden of proof requires a showing that there is no evidence supporting the adverse finding. On a legal sufficiency consideration of a no-evidence claim, the appeals court must accept the evidence in support thereof assuming that a reasonable fact finder could and, conversely, ignore the contradicting evidence only if the fact finder also reasonably could. Consequently, an appellate court will grant a no-evidence point if the record is barren of evidence establishing a critical fact or the reviewing court is prohibited by evidentiary rules or laws from crediting any weight to the sole evidence submitted to establish a vital element or issue or the court finds that the evidence alleged to prove a fact does not supersede the scintilla of evidence threshold or the evidence confirms the opposite of the crucial fact.

C. A factual sufficiency charge on the evidence adduced to support an adverse finding on which the Appellants had to shoulder the burden of

13

proof must corroborate that the evidence was not sufficient to support the adverse finding. On a factual sufficiency challenge, the reviewing court must accept only the evidence that supports and is contrary to the trial court's findings and will reverse the verdict or judgment only if it finds that either or the other is contrary to the overwhelming weight of the evidence as to be manifestly unjust.

D. The trial court's conclusions of law are subject to de novo review on appeal. The appellate court will check to see if the trial court made the correct legal conclusions from the facts. (citations omitted).

## ARGUMENT AND AUTHORITIES

In order to prevail and obtain judicial recognition of a title to land by maturity of the limitations period in a trespass to try title action, the plaintiff must offer and introduce evidence that shows that adverse possession was maintained in compliance with Section 16.021(1) and (3) and, also, the ten year requirement of Section 16.026(a) of the Texas Civil Practice and Remedies Code. In particular, the plaintiff must show that, during the claimed ten years of exercising adverse possession, it was done in an open, notorious, hostile and peaceable manner. *Gannon v. Bywaters,* 669 S.W.2d 756, 758 (Tex. App.—Dallas 1984), rev'd on other grounds, judgm't affmd per curiam, 686 S.W.2d 593 (Tex. 1985). In the instant case, the trial judge was presented with evidence that the "Appellees" and

14

their parents had used the "premises" as their home were all of the Appellees were raised staring around the year 1972 and running without interruption until Elias Aguirre, Sr., passed away in 2001. Appellee Jose Maria Aguirre testified that before they moved into the "premises" they had to level it since it was originally akin to a small hill. In addition, the entry into and possession of the land sought to be imprinted with title by limitations must have been done under a claim of right and with the intent to arrogate the land onto himself. *Benavides v. Stewart,* 655 S.W.2d 298, 300 (Tex. App.—Corpus Christi 1983, no writ). On this point and without the presentation of any contrary evidence, Appellee Arjelio Aguirre testified that he witnessed the transaction were his father Elias Aguirre, Sr., purchased the "premises' from Jesus Tamez. He also identified two receipts introduced into evidence that showed payments made to Mr. Tamez for the purchase of the "premises". Unfortunately, from the "Appellees'" standpoint but without detriment to their adverse possession claim, Elias Aguirre, Sr., was never issued a warranty deed making necessary their claim for judicial recognition of title by limitations. Regardless of the acquisition of a deed or not, the adverse possessor need only prove a visible appropriation and possession of the land that is adequate to give notice to the record title claimant and that starts the counting of the ten-year statutory period and that persists continuously and uninterrupted. *Krause v. Hardin,* 222 S.W. 310, 312 (C.A.- San Antonio, 1920, dismissed w.o.j.).

15

In meeting the requisites of Section 16.026(1), the "Appellees" had to show the cultivation, use or enjoyment of the "premises". And they did by putting forth evidence, again without contradiction, of their improvement of the lot by leveling it and moving a wood frame home on it where they lived and raised a family or two when Merced Aguirre's family is included. Fundamentally, the issue of adverse possession is a question of fact and only on rare occasions can a trial court treat it as a question of law. *Lundelius v. Thompson*, 461 S.W.2d 153, 155(Tex. Civ. App. –Austin 1970, writ ref. n.r.e.).

The Appellant dwells on the issue that "Appellees" did not identify or locate the "premises" on the ground. In making this complaint, the Appellant not only ignores the documentary evidence it introduced at trial, though it was established that A.V. Margo did not claim or consider them part of his estate since they were not listed in either the will nor the estate's inventory undercutting the testimony of Appellant's witness Fred Margo, but also the testimony of the surveyor and Appellee Jose Maria Aguirre describing the "premises" and how to reach and locate them. In addition, the record of the trial includes a plat of the "premises showing that it is composed of two sections of 0.11 and 0.15 of an acre totaling to 0.26 Of an acre that is roughly equal to the acreage shown in the final judgment of 0.2648 of an acre. (1CR199 and 0218-0220). Moreover, the appellate record shows that Appellant filed a pleading entitled Defendant's Objection to Plaintiffs'

Proposed Final Judgment and Request for Status Conference. (1CR0201-0203). There is no reference in the record to this pleading having been presented to or considered by the trial court. (See generally 1CR). In any event, the description set out in the final judgment in this case avoids any uncertainty that could make it fatally defective. See *Bingham v. Boles*, 458 S.W.2d 99,100 (Tex. Civ. App.-El Paso 1970).

## PRAYER

The Appellees request that the Court affirm the final judgment and deny the Appellant's appeal. The Appellees pray for general relief.

Respectfully submitted,

By: /S/ *Margil Sanchez, Jr.*
Margil Sanchez, Jr.
Attorney at Law
P.O. Box 297
208 N. Britton Avenue
Rio Grande City, TX 78582
Tel. No. 956-487-7575
Fax No. 956-487-8491
Bar I.D. No. 17570800

17

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Appellees' Brief was sent by electronic transmission to Attorney Flor E. Flores on August 27th, 2015.

*Margil Sanchez, Jr.*
Margil Sanchez, Jr.
Attorney at Law

## Certificate of Compliance

On Appellees' Brief, I certify as Appellees' Attorney that it is in compliance with Rule 9.4 of the Texas Rules of Appellate Procedure in that it is computer generated and contains 3,883 words and is in fourteen font format.

Signed on August 27, 2015.

*Margil Sanchez, Jr.*
Margil Sanchez, Jr.
Attorney at Law

# APPENDIX

§ 16.021. Definitions.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle B. Trial Matters**

**Chapter 16. Limitations**

**Subchapter B. Limitations Of Real Property Actions**

*Includes all legislation signed by the Governor or filed without the Governor's signature as of June 19, 2015*

**§ 16.021. Definitions**

In this subchapter:

(1) "Adverse possession" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person.

(2) "Color of title" means a consecutive chain of transfers to the person in possession that:

   (A) is not regular because of a muniment that is not properly recorded or is only in writing or because of a similar defect that does not want of intrinsic fairness or honesty; or

   (B) is based on a certificate of headright, land warrant, or land scrip.

(3) "Peaceable possession" means possession of real property that is continuous and is not interrupted by an adverse suit to recover the property.

(4) "Title" means a regular chain of transfers of real property from or under the sovereignty of the soil.

Cite as Tex. Civ. Prac. and Rem. Code § 16.021

**History.** Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.

**Texas Statutes**

**Civil Practice and Remedies Code**

**Title 2. Trial, Judgment, And Appeal**

**Subtitle B. Trial Matters**

**Chapter 16. Limitations**

**Subchapter B. Limitations Of Real Property Actions**

*Includes all legislation signed by the Governor or filed without the Governor's signature as of June 19, 2015*

### § 16.026. Adverse Possession: 10-Year Limitations Period

(a)    A person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property.

(b)    Without a title instrument, peaceable and adverse possession is limited in this section to 160 acres, including improvements, unless the number of acres actually enclosed exceeds 160. If the number of enclosed acres exceeds 160 acres, peaceable and adverse possession extends to the real property actually enclosed.

(c)    Peaceable possession of real property held under a duly registered deed or other memorandum of title that fixes the boundaries of the possessor's claim extends to the boundaries specified in the instrument.

Cite as Tex. Civ. Prac. and Rem. Code § 16.026
History. Amended by Acts 1989, 71st Leg., ch. 764, Sec. 1, eff. Sept. 1, 1989.
Acts 1985, 69th Leg., ch. 959, Sec. 1, eff. Sept. 1, 1985.